UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                  :

IN RE WORLD TRADE CENTER LOWER   :   Docket: 21-mc-102
MANHATTAN DISASTER SITE LITIGATION  :
                  :

-------------------------------------------------------- x
WLADYSLAW KWASNIK,          :   **ORDER AND OPINION**
                  :   **DENYING IN PART AND**
          Plaintiff,    :   **GRANTING IN PART**
                  :   **DEFENDANTS' MOTIONS**
     -against-          :   **FOR SUMMARY JUDGMENT**
                  :   **TO DISMISS THE**
160 WATER STREET, INC., ET AL.,    :   **COMPLAINT**
                  :
          Defendants.   :   Case Number: 07-cv-11291
                  :

-------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

      In this action, Plaintiff Wladyslaw Kwasnik asserts claims for common law

negligence and violations of sections 200 and 241(6) of the New York Labor Law. The claims

are based upon injuries Kwasnik allegedly suffered after working in numerous buildings in the

vicinity of the World Trade Center site in the weeks, months, and years following the 9/11

terrorist attacks. Kwasnik asserts his claims against various owners, managing agents, lessees,

environmental consultants, and contractors (collectively, "Defendants") that allegedly owned,

managed, or worked in the buildings.

      The Defendants have moved for summary judgment to dismiss the claims against

them. The owners, managing agents, and lessees moving for summary judgment are: 160 Water

Street, Inc., 160 Water Street Associates, Inc., G.L.O. Management, Inc., General Reinsurance

Corp., the National Association of Securities Dealers, Inc., Boston Properties, Inc., 90 Church

Street, L.P., Brookfield Financial Properties, Inc.,[1] and 59 Maiden Lane Associates, LLC (collectively, the "Owner Defendants"). The environmental consultants moving for summary judgment are: Hillmann Environmental Group, LLC and Ambient Group, Inc. (together, the "Environmental Consultant Defendants"). The contractors moving for summary judgment are Structure Tone, Inc.,[2] ("Structure Tone") and Blackmon-Mooring Steamatic Catastrophe, Inc. ("BMS"). For the following reasons, the Defendants' motions are granted in part and denied in part.

## I.    Background[3]

This opinion is one more in a series of opinions resolving numerous motions for summary judgment filed by defendants in cases arising from abatement work performed by various plaintiffs in the buildings surrounding the World Trade Center site in the aftermath of the September 11, 2001 terrorist attacks. I previously provided the relevant background facts in *In re World Trade Center Lower Manhattan Disaster Site Litigation*, No. 09-cv-680, 2014 WL 4446153 (S.D.N.Y. Sept. 9, 2014). For this reason, familiarity with the facts is presumed and this opinion will describe only the facts relevant to my disposition of the issues particular to the motions at issue here.

### A.    1 World Financial Center

1 World Financial Center is located southwest of the World Trade Center site, across West Street. On and after September 11, 2001, the building was owned by Brookfield Properties One WFC Co. LLC and managed by Brookfield Financial Properties, LP (together,

---

[1] Brookfield Financial Properties, Inc. also moves on behalf of the following entities: Brookfield Financial Properties, L.P., Brookfield Properties OLP Co. LLC (f/k/a BFP One Liberty Plaza Co. LLC), Brookfield Properties One WFC Co. LLC (f/k/a WFP Tower A Co. L.P.), and Brookfield Properties One WFC G.P. Corp. (f/k/a WFP Tower A GP Corp.).

[2] Structure Tone, Inc. also moves on behalf of the following entities: Structure Tone (UK), Inc. and Structure Tone Global Services, Inc.

[3] The facts stated here are either undisputed or presented in the light most favorable to Kwasnik, as the non-moving party. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

"Brookfield 1 WFC"). *See* Decl. William J. Smith Supp. Brookfield Mot. Summ. J. ("Smith Decl."), Exh. G at 24:1-25:18. 1 World Financial Center sustained moderate damage consisting of several hundred broken windows and an infiltration of World Trade Center dust and debris. *See* Cannata Decl., Exh. 7 at 7-2, Exh. 18A. Brookfield hired Hillmann Environmental Group, LLC ("Hillmann") as its environmental consultant.[4] *See* Smith Decl., Exh. F at 53:8-54:18. On September 20, 2001, Hillmann tested the dust and debris for asbestos. *See* Cannata Decl., Exh. 86. That test revealed asbestos levels below 1%. *See* Smith Decl., Exh. J. Although the debris was not considered "asbestos-containing material" by regulation, a report prepared by Hillmann noted that "Brookfield [1 WFC] opted to clean all heavily dusty areas using asbestos abatement methodologies and licensed asbestos contractors as a safety precaution." Cannata Decl., Exh. 86.

Brookfield 1 WFC alleges that it hired Hillmann to advise it on how to treat the building's remediation and to develop procedures for implementing the remediation. *See* Smith Decl., Exh. F at 53:19-54:5. The record does not reflect whether a safety and remediation protocol was developed or who developed it. There is nothing in the record that suggests Hillmann tested the pH level of the dust. *See id.*, Exh. J; Cannata Decl., Exh. 86. The parameters for the ongoing testing were "selected by Hillmann based upon the directions of Brookfield Financial Properties, consultation with accredited laboratories, and Hillmann's professional judgment." *Id.*, Exh. 86.

Brookfield 1 WFC retained BMS, PAL Environmental Services ("PAL"), and ETS Contracting, Inc. ("ETS") to conduct the remediation work. *See* Smith Decl., Exh. F at 140; Cannata Decl., Exh. 86. BMS performed remediation work at 1 World Financial Center from November 21, 2001 to January 19, 2002 and, again, from April 15, 2002 to May 9, 2002. *See* Decl. Frank Keenan Supp. BMS Mot. Summ. J. ("Keenan Decl."), Exh. 5 at 18-19.

---

[4] Kwasnik has not brought claims against Hillmann with respect to its work at 1 World Financial Center.

Kwasnik worked at 1 World Financial Center for ETS for eight hours the week of April 1, 2002. *See* Smith Decl., Exh. E. His work consisted of cleaning dust and debris. *See* Cannata Decl., Exh. 47 at 147:14-21. Other workers removed contaminated ceiling tiles and flooring, and covered broken windows. *See id.*, Exh. 20A, Exh. 53 at 217:3-218:24, Exh. 59 at 525:20-526:3. While Kwasnik testified that he did not perform any asbestos removal, he was provided with asbestos-specific safety equipment. *See* Smith Decl., Exh. B at 147:14-150:4. He alleges that his supervisors refused to provide him with replacement filters, *see* Cannata Decl., Exh. 47 at 162:11-163:18, and that he was not informed the World Trade Center dust was hazardous, *see id.*, Exh. 47 at 150:9-17.

### B.    3 World Financial Center

3 World Financial Center is located west of the World Trade Center site, across West Street. On September 11, 2001, 3 World Financial Center sustained substantial damage consisting of hundreds of broken windows, façade damage, and an infiltration of World Trade Center dust and debris. *See* Cannata Decl., Exh. 138. Both ETS and BMS were retained to perform the remediation work. Kwasnik performed general abatement work for ETS at 3 World Financial Center from February 18, 2002 to March 18, 2002. *See* Keenan Decl., Exh. 2. BMS performed work between February 28, 2002 and March 21, 2002. *See* Keenan Decl., Exh. 5. BMS's work was limited to removing computer equipment on the third and eleventh floors. *See* Keenan Decl., Exh. 6. BMS did not utilize any labor provided by ETS and did not, at any point, supervise Kwasnik. *See* Keenan Decl., Exh. 8.

### C.    1 Liberty Plaza

1 Liberty Plaza is located one block east of the World Trade Center site. At the time of the World Trade Center attacks it was owned by Brookfield Properties OLP Co. LLC and

managed by Brookfield Financial Properties, LP (together, "Brookfield OLP"). *See* Smith Decl., Exh. M at 24:1-25:18. The building sustained moderate damage, consisting of broken windows and an infiltration of World Trade Center dust and debris. *See* Cannata Decl., Exh. 7 at 7-2, Exh. 19H. Pursuant to an oral agreement, Brookfield OLP retained Hillmann Environmental Group, LLC ("Hillmann") to test the dust and debris for multiple toxins, prepare a "health and safety plan," and "coordinate environmental clean-up." *See id.*, Exh. 80 § 2.3; Decl. Salvatore J. Calabrese Supp. Hillmann's Mot. Summ. J. ("Calabrese Decl."), Exh. C ¶ 48.

On September 16, 2001, Hillmann tested the asbestos content of the dust. *See* Cannata Decl., Exh. 81. Although testing revealed the dust to contain less than 1% asbestos, *see id.*, Exh. 81, "Brookfield [OLP] opted to use abatement methodologies and licensed asbestos abatement workers," *id.*, Exh. 80 at 3, Exh. 81. There is also evidence that Hillmann advised Brookfield OLP that it should implement asbestos abatement methodologies. *See* Decl. Richard E. Leff Supp. NASD Mot. Summ. J. ("Leff NASD Decl."), Exh. G at 40:3-9. Hillmann did not test the pH levels of the airborne dust and initially tested only for asbestos. *See* Cannata Decl., Exh. 80. Brookfield OLP alleges that it did not supervise the cleanup work and that Hillmann developed the safety and remediation protocol for the building. *See* Smith Decl., Exh. G at 70:24-71:14.

Hillmann recommended ETS and PAL to perform the bulk of the abatement work. *See* Cannata Decl., Exh. 80 at 3. BMS performed work at 1 Liberty Plaza only on December 1, 2001 and, again, in July and August 2002. *See* Keenan Decl., Exh. 5. In or around December 2001, Gruntal and Company, a tenant of One Liberty Plaza, retained Environmental Disaster Services ("EDS") to perform cleanup work on certain floors. *See* Leff NASD Decl., Exh. J at 14:15-15:14, Exh. K, Exh. O. EDS, in turn, retained LVI Environmental Services, Inc.

("LVI") to perform the work. *See id.*, Exh. J at 20:17-19, Exh. K. LVI was required to employ asbestos abatement procedures. *See id.*, Exh. J at 21:6-13, 42:12-18. It is not clear from the record to what extent LVI's work was controlled by the safety and remediation protocol prepared by Hillmann.

General Reinsurance Corp. ("General Re") and the National Association of Securities Dealers, Inc. ("NASD") leased various floors in 1 Liberty Plaza. *See* Decl. Richard E. Leff Supp. General Re Mot. Summ. J. ("Leff General Re Decl."), Exh. F; Leff NASD Decl., Exh. F at 21:5-14. Between September 11, 2001 and October 22, 2001, Brookfield OLP prohibited all tenants from reoccupying the building while testing and remediation were performed. *See id.*, Exh. H. General Re did not occupy its floor until June 2002. *See* Leff General Re Decl., Exh. G at 18:20-19:3. LVI did not perform any work on the floors leased by NASD and General Re. *See* Leff NASD Decl., Exh. J at 48:20-49:20. There is no evidence that NASD or General Re developed the remediation and safety protocols for the cleanup work, influenced the decision to treat the remediation as an asbestos abatement, or directly supervised Kwasnik's work. *See id.*, Exh. J at 49:8-12, Exh. F at 45:5-46:4, 84:3-10, 96:5-8; Leff General Re Decl., Exh. G at 32:17-33:8, 37:2-7, 44:3-10.

Kwasnik worked at 1 Liberty Plaza for LVI for approximately 30 hours during the week of December 13, 2001. *See* Smith Decl., Exh. E. LVI supervised Kwasnik's work, *see id.*, Exh. B at 124:21-25:8, which consisted of remediating asbestos, cleaning HVAC ducts, and removing ceiling tiles, carpet, and furniture, *see* Cannata Decl., Exh. 47 at 120:12-121:13. Other workers removed broken window frames, removed sheetrock, vacuumed and wiped up dust, and cleaned HVAC systems. *See id.*, Exh. 17B, Exh. 18D. He was provided with an asbestos suit, rubber boot covers, and gloves. *See id.*, Exh. 47 at 119:18-120:11. However, he was provided

6

with only one set of filters per day. *See id.*, Exh. 47 at 162:11-163:18.  Kwasnik wore half-mask

respirators and a full-mask respirator when he performed the asbestos abatement. *See id.*, Exh.

47 at 120:4-7.  He was not told that the World Trade Center dust was hazardous. *See id.*, Exh. 47

at 120:13-121:7.

### D.   90 Church Street

90 Church Street is located one block north of the World Trade Center site.  On

September 11, 2001, the building was owned by the United States Postal Service, which had

leased it to 90 Church Street L.P. *See* Decl. Richard Leff Supp. Boston Properties, Inc. Mot.

Summ. J. ("Leff Boston Properties Decl."), Exh. G.  Boston Properties, Inc. ("Boston

Properties") managed the property. *See id.*, Exh. F at 11:2-13.  The west side of 90 Church

Street sustained severe structural damage—part of 7 World Trade Center had collapsed into its

base and projectiles from the collapsing towers destroyed hundreds of windows. *See id.*, Exh. F

at 58:3-22.  Dust and debris were present throughout the building. *See* Cannata Decl., Exh. 47 at

155:14-156:6.

Boston Properties hired Ambient Group, Inc. ("Ambient") to evaluate the

environmental condition of the building, develop a remediation protocol, and monitor the

restoration process. *See* Leff Boston Properties Decl., Exh. H at 29:15-30:17.  Boston Properties

did not limit the scope of Ambient's work to asbestos abatement. *See* Cannata Decl., Exh. 175.

Boston Properties retained Structure Tone, Inc. as general contractor for all repair and

reconstruction of 90 Church Street. *See* Leff Boston Properties Decl., Exh. F at 104:11-105:16.

Together, Structure Tone, Ambient, Boston Properties, and several non-party tenants developed

a safety and remediation protocol that required testing of multiple contaminants and the use of

personal protective equipment. *See id.*, Exh. I at 28:12-34:21.  The project was deemed an

asbestos abatement due to the presence of asbestos. *See* Decl. John Cookson Supp. Ambient

Motion Summ. J. ("Cookson Decl."), Exh. E at 53:1-11. Thus, the protocol required the use of

licensed asbestos-abatement workers, compliance with asbestos regulations, and that workers be

required to wear half-mask respirators. *See* Cannata Decl., Exh. 177.

   Structure Tone, as general contractor, oversaw the remediation process at 90

Church Street. It retained subcontractors, such as Pinnacle Environmental Corp. ("Pinnacle"), to

perform the remediation and ensured compliance with safety protocols, including the use of

proper respiratory equipment. *See* Aff. William Joyce Supp. Structure Tone, Inc. Mot. Summ. J.

("Joyce Aff."), Exh. I at 28:9-17, 46:19-47:12; Leff Boston Properties Decl., Exh. M at 153:19-

22. While Structure Tone provided its own employees with "powered air purifying respirators,"

*see* Joyce Aff., Exh. J at 21:15-22:7, it did not provide any equipment directly to the

subcontractors' workers, *see id.*, Exh. I at 51:20-52:4, 90:9-13. Rather, subcontractors provided

their employees with respiratory equipment and told them how often to change their filters. *See*

*id.*, Exh. I at 51:20-52:4, 90:4-13, Exh. J at 72:14-73:2, Exh. K at 54:11-17. Additionally,

Structure Tone's subcontractors would propose the manner and method of the work to Ambient,

who would approve or disapprove the proposal. *See id.*, Exh. I at 151:24-152:8.

   Kwasnik worked for Pinnacle at 90 Church Street between May 4, 2003 and July

7, 2003 for approximately 449 hours. *See id.*, Exh. D. Boston Properties did not supervise

Kwasnik's work. *See* Leff Boston Properties Decl., Exh. N at 20:15-21:5. His work consisted of

general debris and dust removal as well as cleaning and removing mail-handling machinery. *See*

Cannata Decl., Exh. 47 at 155:9-161:22. Other workers "demolished rooms," *id.*, Exh. 55 at

495:22-496:3, and boarded up broken windows, *see* Joyce Aff., Exh. I at 36:2-12. The

remediation of 90 Church Street involved the tearing out of entire floors and the removal of

8

walls. *See* Cookson Decl., Exh. J at 222:23-223:5. Boston Properties alleges that, during this work, Kwasnik was provided with, and wore, a body suit, rubber boots and gloves, filters and either a half-face or full-face respirator. *See* Leff Boston Properties Decl., Exh. M at 162:3-10, 163:22-166:21. However, Kwasnik complained to both Pinnacle and his union that, rather than provide him with clean filters, his supervisors told him to manually wash and reuse dirty filters. *See* Cannata Decl., Exh. 47 at 162:11-63:18. He also testified that he was not told the World Trade Center dust was hazardous. *See id.*, Exh. 47 at 151:7-152:20.

### E. 160 Water Street

160 Water Street is located approximately seven blocks west of the World Trade Center site and is owned by 160 Water Street Associates, Inc. ("Water Street Associates"). *See* Decl. Richard E. Leff Supp. Water Street Associates Mot. Summ. J. ("Leff Water Street Associates Decl."), Exh. F at 14:3-6. As a result of the September 11th attacks, the buildings sustained an infiltration of World Trade Center dust but no other damage. *See id.*, Exh. F at 50:8-13, Exh. I. AIG, a tenant of the building, retained A.R.T., Inc. ("ART"), with the knowledge and consent of Water Street Associates, to perform environmental testing on October 1, 2001 on AIG's floors. *See id.*, Exh. F at 60:25-61:11. There is no indication that the pH level was tested. *See id.*, Exh. I.

AIG retained Trade Winds Environmental Restoration, Inc. ("Trade Winds") to perform the remediation on the floors it occupied. *See id.*, Exh. F at 69:23-73:20. Trade Winds required its employees to use personal protective equipment, and monitored workers' compliance. *See id.*, Exh. G at 95:17-24, Exh. H at 34:8-13. The record does not reflect whether AIG, ART, or Trade Winds developed a safety and remediation protocol applicable to Kwasnik's work. Kwasnik worked at 160 Water Street for Trade Winds the week of October 9, 2001 for 55

9

hours. *See id.*, Exh. C at 1. Water Street Associates did not supervise his work, *see id.*, Exh. G at 115:22-116:22, Exh. H at 131:25-132:11, which consisted primarily of cleaning dust, *see id.*, Exh. E at 83:22-84:9. Kwasnik wore an asbestos suit, gloves, and half-mask respirator, with filters. *See id.*, Exh. E at 85:4-86:10.

The record reflects a general lack of involvement on the part of Water Street Associates in the environmental testing and remediation of the floors occupied by AIG. It was unaware of the results of the testing performed on AIG's floors.[5] *See id.*, Exh. F at 62:22-63:19. Nor was it aware of the possibility of contamination from lead, asbestos or other dangerous contaminants. *See id.*, Exh. F at 64:13-65:15. Similarly, Water Street Associates was not informed of the procedures employed by Trade Winds. *See id.* While Water Street Associates initially sealed the building, *see id.*, Exh. F at 33:25–43:3, and tested the dust on the 14th Floor, *see* Cannata Decl., Exh. 121, the record does not reflect what involvement, if any, Water Street Associates had with the testing and remediation of the World Trade Center dust on the floors on which Kwasnik worked.

**F.    59 Maiden Lane**

59 Maiden Lane is located approximately three blocks west of the World Trade Center site and was owned by 59 Maiden Lane Associates LLC ("Maiden Lane Associates"). *See* Decl. Daniel S. Corde Supp. Maiden Lane Associates Mot. Summ. J. ("Corde Decl."), Exh. F at 9:11-20. Maiden Lane Associates claims that the work performed by Kwasnik was a standard asbestos abatement, unrelated to the World Trade Center dust and debris that infiltrated buildings in lower Manhattan after the September 11th attacks. In support, it merely points to Kwasnik's testimony that the job was treated as a standard asbestos abatement. *See id.*, Exh. C

---

[5] Although Water Street Associates retained ART and PAR Environmental Inc. ("PAR") to perform testing and remediation work on the 14th floor, *see* Cannata Decl., Exh. 121, there is no evidence that Kwasnik worked for PAR or any other company on that floor.

at 134:15-136:25. Kwasnik, however, presents evidence that an "emergency clean-up of asbestos dust" began on October 1, 2001. *See* Cannata Decl., Exh. 162. There is nothing in the record that indicates whether or not the remediation of the World Trade Center dust was completed before Kwasnik performed his work at 59 Maiden Lane.

Kwasnik worked at 59 Maiden Lane for 96 hours between July 20, 2003 and August 25, 2003 for Legend Construction ("Legend"). *See* Smith Decl., Exh. E. His work consisted of general asbestos abatement, cleaning dust off surfaces, and removing furniture, tiles, and carpet. *See* Cannata Decl., Exh. 47 at 175:9-177:18. His work was not supervised by any representatives of Maiden Lane Associates. *See* Corde Decl., Exh. C at 116:16-117:3. Legend provided Kwasnik with his personal protective equipment aside from what he brought with him to the work site. *See id.*, Exh. E at 175:19-182:18.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must view all evidence in the light most favorable to the nonmoving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford*, 391 F.3d at 83. However, in deciding a motion for summary judgment, a District Court is not required to "scour the record on its own in a search for evidence" where the non-moving party fails to

11

adequately present it. *CILP Assocs. LP v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d

Cir. 2013) (internal quotations and citations omitted).

## III.   Discussion

### A.   Exceptions to the Duty to Provide a Safe Workplace

Various Defendants argue that Kwasnik's claims under the New York Labor Law

are barred by two related exceptions to the duty to provide a reasonably safe workplace.  The

first exception applies to injuries sustained due to defective conditions that are "part of or

inherent in" the very work being performed or conditions that are "readily observed by

reasonable use of the senses in light of the worker's age, intelligence and experience." *Bombero

v. NAB Constr. Corp.*, 10 A.D.3d 170, 171 (1st Dep't 2004) (holding no duty owed to employee

who walked directly on exposed steel bars that were part of the construction) (citing *Gasper v.

Ford Motor Corp.*, 13 N.Y.2d 104 (1963)).  The second exception applies where the particular

defect giving rise to a plaintiff's injury was the very defect the injured plaintiff was hired to

remediate.  *See Kowalsky v. Conreco Co.*, 264 N.Y. 125, 128 (1934) ("An employee cannot

recover for injuries received while doing an act to eliminate the cause of the injury.").

Kwasnik points to evidence demonstrating a significant focus on asbestos

abatement at each building in which he worked.  This is sufficient to raise a genuine issue of fact

as to whether, in the terms of his hiring, he was made aware that the dust he was hired to remove

was "high-alkaline" dust, or that removal of "high-alkaline" dust required different procedures

and protections than those relevant to asbestos-containing material, or that Kwasnik was aware

of the particular hazard posed by his work.  Accordingly, for the reasons previously elaborated in

*In re World Trade Center Lower Manhattan Disaster Site Litigation*, No. 09-cv-680, 2014 WL

4446153, at *11-12 (S.D.N.Y. Sept. 9, 2014), I decline to grant the Defendants' motions on this basis.

### B.    The Scope of the Duty Imposed by the New York Labor Law

Various Defendants argue that they owed no duty under the New York Labor Law because they were not owners, general contractors, or statutory "agents" under section 200 or section 241(6) of the New York Labor Law.  In order for a party to have a duty under section 200, it must "have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition." *Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 317 (1981).  Likewise, a party will be considered a statutory "agent" under section 241(6) if it has the authority to control the "injury producing activity." *Id.* at 317-18.

Kwasnik has presented evidence, sufficient to raise a triable issue of fact, that the Environmental Consultant Defendants either developed the remediation protocols (including the required personal protective equipment to be worn by the workers) or influenced the decision to treat the remediation as an asbestos abatement in the respective buildings for which they were retained. *See* Cannata Decl., Exh. 80, Exh. 177; Calabrese Decl., Exh. C ¶ 48; Leff NASD Decl., Exh. G at 40:3-9; Smith Decl., Exh. G at 70:24-71:14; Leff Boston Properties Decl., Exh. H at 29:15-30:17, Exh. I at 28:12-34:21; Cookson Decl., Exh. E at 53:1-11.  Accordingly, for the reasons previously elaborated in *In re World Trade Center Lower Manhattan Disaster Site Litigation*, No. 09-cv-680, 2014 WL 4446153 at *12-14, I hold that Kwasnik has raised a triable issue of fact as to whether Hillmann or Ambient had the authority to "avoid or correct" the alleged use of inadequate respiratory equipment, *Russin*, 54 N.Y.2d at 317, and therefore owed a duty to Kwasnik under the Labor Law.[6]

---

[6] Similarly, for the reasons previously elaborated in *In re World Trade Center Lower Manhattan Disaster Site Litigation*, No. 09-cv-680, 2014 WL 4446153 at *14-15, I reject Hillmann's argument that it did not owe a duty of

13

However, Kwasnik has failed to raise an issue of fact with respect to BMS's duty to him at 1 Liberty Plaza, 1 World Financial Center, and 3 World Financial Center.  BMS was not present at either 1 Liberty Plaza or 1 World Financial Center on the days on which Kwasnik worked.  *See* Keenan Decl., Exh. 5, Exh. 8.  At 3 World Financial Center, BMS did not utilize any labor provided by Kwasnik's employer, ETS, nor did BMS supervise Kwasnik.  *See* Keenan Decl., Exh. 8.  In opposition, Kwasnik has failed to present any controverting evidence. Accordingly, I grant the motion for summary judgment filed by BMS with respect to Kwasnik's claims arising from his work at 1 Liberty Plaza, 1 World Financial Center, and 3 World Financial Center.

Kwasnik has also failed to raise an issue of fact with respect to his claims against General Re and NASD arising from his work 1 Liberty Plaza.  Both defendants have presented substantial evidence that they lacked the authority to control the choice of personal protective equipment worn by workers or the safety procedures implemented by the contractors.  *See* Leff NASD Decl., Exh. F at 45:5-46:4, 84:3-10, 96:5-8, Exh. H, Exh. J at 48:20-49:20; Leff General Re Decl., Exh. G at 18:20-19:3, 32:17-33:8, 37:2-7, 44:3-10.  In opposition, Kwasnik points to no contrary evidence.  Accordingly, I hold that neither General Re nor NASD owed a duty to Kwasnik under the New York Labor Law and grant their motions in their entirety.

### D.    New York Labor Law Section 200

Section 200 of the New York Labor Law codifies[7] the common law duty "to protect the health and safety of employees."  *In re Joint E. & S. Dist. Asbestos Litig.*, 827 F.

---

care to Kwasnik as a non-contracting third party.  Kwasnik has raised an issue of fact that the Environmental Consultant Defendants exacerbated the existing hazard by influencing the choice of respiratory equipment incapable of handling that particular hazard and therefore breached an independent duty of care owed to Kwasnik by "launch[ing] a force or instrument of harm."  *Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 140 (2002).
[7] Because section 200 is a codification of common law negligence, courts analyze the claims simultaneously.  *See Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 455 n. 15 (S.D.N.Y. 2005) (collecting cases).

14

Supp. 1014, 1052–53 (S.D.N.Y.1993), *aff'd in part rev'd in part on other grounds*, 52 F.3d 1124
(2d Cir. 1995). Specifically, section 200 requires that a workplace "be so constructed, equipped,
arranged, operated and conducted as to provide a reasonable and adequate protection to the lives,
health and safety of all persons employed therein or lawfully frequenting such places." N.Y.
Labor Law § 200(1) (McKinney 2014).

Section 200 has two disjunctive standards for determining liability. *See*
*Chowdury v. Rodriguez*, 57 A.D.3d 121, 128 (2d Dep't 2008). When a plaintiff's injury "arises
out of defects or dangers in the methods or materials of the work," the "means and methods"
standard will apply. *Id.* By contrast, where a plaintiff's injuries arise out of the "condition of the
premises rather than the methods or manner of the work," the "premises liability" standard
applies. *Id.* If an injury arises from both sets of conditions, concurrently, the proofs are to be
evaluated under both standards. *See Reyes v. Arco Wentworth Mgmt. Corp.*, 83 A.D.3d 47, 52
(2d Dep't 2011) ("When an accident is alleged to involve defects in both the premises and the
equipment used at the work site, the property owner moving for summary judgment with respect
to causes of action alleging a violation of Labor Law § 200 is obligated to address the proof
applicable to both liability standards.").

Kwasnik alleges that his injuries arose from two concurrent causes: (1) the toxic
"alkaline-based" dust and debris that spewed out of the collapsed World Trade Center buildings
on September 11, 2001 and present in each of the relevant buildings, and (2) the use of
respiratory equipment and safety procedures inappropriate for the particular hazard posed by the
"alkaline-based" dust. Accordingly, I have to evaluate the proofs relevant to both the "means
and method" standard and the "premises liability" standard. *See id.*

### 1.    The "Means and Methods" Standard

15

Where a plaintiff's claim arises out of an alleged defect or condition in the "methods or materials" of the work, a party subject to Labor Law § 200 cannot be held liable unless "it is shown that the party to be charged exercised some supervisory control over the operation." *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 505 (1993); *see also Persichilli v. Triborough Bridge & Tunnel Auth.*, 16 N.Y.2d 136 (1965).

The Owner Defendants adequately show that they did not exercise supervisory control over the work giving rise to Kwasnik's injuries. Kwasnik's opposition papers fail to rebut the Owner Defendants' showing. Accordingly, I hold that no genuine issue of material fact under the Section 200 "means and methods" standard exists. Owners Defendants' motions for summary judgment are granted to the extent they seek dismissal of Kwasnik's claims under the Section 200 "means and methods" standard.

However, I deny the Environmental Consultant Defendants' motions for summary judgment. Kwasnik points to evidence that, at each of the relevant buildings, the Environmental Consultant Defendants played a role in the choice of respiratory equipment and safety procedures employed by the contractors that hired Kwasnik to perform the clean-up work. *See* Cannata Decl., Exh. 80, Exh. 177; Calabrese Decl., Exh. C ¶ 48; Leff NASD Decl., Exh. G at 40:3-9; Smith Decl., Exh. G at 70:24-71:14; Leff Boston Properties Decl., Exh. H at 29:15-30:17, Exh. I at 28:12-34:21; Cookson Decl., Exh. E at 53:1-11; Joyce Aff., Exh. I at 151:24-152:8. This is sufficient to raise a triable issue of fact as to whether the Environmental Consultant Defendants "exercised supervisory control over the means and method of the work." *Ross*, 81 N.Y.2d at 505.

For the same reasons, I deny Structure Tone's motion for summary judgment. Structure Tone helped develop the remediation protocol for the work performed at 90 Church

16

Street. *See* Leff Decl., Exh. I at 28:12-34:21. This is sufficient to raise a question of fact as to

Structure Tone's liability under section 200 of the Labor Law.

## 2.     The "Premises Liability" Standard

Where a plaintiff's claim arises out of the condition of the premises, a party is

liable if (1) it created the dangerous condition causing the injury or (2) failed to remedy a

dangerous or defective condition of which he or she had actual or constructive notice. *See*

*Ortega v. Puccia*, 57 A.D.3d 54, 61 (2d Dep't 2008). Furthermore, the statutory duty to maintain

a reasonably safe workplace implies a duty to make timely and adequate inspections for dangers

that may reasonably be discovered. *DiNunzio v. Ken-Jil Elec. Contractors, Inc.*, 473 F. Supp. 2d

485, 487 (S.D.N.Y 2007). The question of whether a defendant "has conducted reasonable

inspections of the premises is usually a question of fact for the jury to resolve in determining

whether defendants fulfilled their duty to maintain the premises in a reasonably safe condition."

*Dufrain v. Hutchings*, 112 A.D.3d 1212, 1212 (3d Dep't 2013).

Kwasnik presents evidence that the Owner Defendants either retained

environmental consultants and contractors specifically to perform asbestos abatement and

monitoring or played some role in the decision to implement asbestos abatement procedures at

the worksites, leading to the use of allegedly inadequate respiratory equipment. *See* Cannata

Decl., Exh. 80, Exh. 81, Exh. 86; Leff Boston Properties Decl., Exh. I at 28:12-34:21. It is true

that certain Owner Defendants did not initially limit the scope of the consultants' work to

asbestos testing and monitoring. *See, e.g.*, Cannata Decl., Exh. 175. However, on the record

before me, I cannot hold as a matter of law that the Owner Defendants played no role in the

allegedly unreasonable decision to use asbestos-specific safety equipment and procedures.

Similarly, although Water Street Associates played little to no role in the testing and remediation

of the floors on which Kwasnik worked, factual issues remain regarding whether Water Street Associates discharged its duty to conduct a reasonable inspection of 160 Water Street and reasonably remedied any hazards of which it may have had constructive notice. *See* Leff Water Street Associates Decl., Exh. F at 62:22-63:19, 64:13-65:15, 73:23-74:5. Accordingly, for the reasons previously elaborated in *In re World Trade Center Lower Manhattan Disaster Site Litigation*, No. 09-cv-680, 2014 WL 4446153 at *18-19, I deny the Owner Defendants' motions for summary judgment under section 200 of the Labor Law.

Additionally, there are questions of fact as to whether this Court has jurisdiction over Kwasnik's claims against Maiden Lane Associates arising from his work at 59 Maiden Lane. Maiden Lane Associates points to evidence that suggests Kwasnik's work may not have been sufficiently related to the September 11th terrorist attacks to fall within this Court's jurisdiction under the Air Transportation Safety and System Stabilization Act. *See* 49 U.S.C. § 408(b)(3) (2012) (providing exclusive jurisdiction to this Court over claims "resulting from or relating to the terrorist-related aircraft crashes" of September 11, 2001); Corde Decl., Exh. C at 134:15-136:25. However, Kwasnik presents contrary evidence, sufficient to raise a triable issue of fact. *See* Cannata Decl., Exh. 162. Accordingly, I also deny Maiden Lane Associates' motion for summary judgment with respect to Kwasnik's section 200 claims.

**E.   New York Labor Law Section 241(6)**

Section 241(6) of the New York Labor Law provides that:

> All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work . . . shall comply therewith.

18

N.Y. Labor Law § 241(6) (McKinney 2014).  The statute imposes a non-delegable duty upon

owners, general contractors, and their agents, to ensure worksite compliance with the New York

Industrial Code.  *See Morris v. Pavarini Constr.*, 22 N.Y.3d 668, 673 (2014); *Rizzuto v. L.A.

Wenger Constr. Co.*, 91 N.Y.2d 343, 348 (1998).  To prove vicarious liability under section

241(6), a plaintiff must demonstrate that (1) the work giving rise to the injury was in connection

with "construction, excavation or demolition"; and (2) a violation of an applicable regulation

implementing section 241(6) caused the plaintiff's injury.  *See Nagel v. D & R Realty Corp.*, 99

N.Y.2d 98, 101 (2002); *Rizzuto*, 91 N.Y.2d at 348-50.  These requirements are addressed in turn.

### 1.  "Construction, Excavation or Demolition"

For the reasons stated in *In re World Trade Center Lower Manhattan Disaster

Site Litigation*, No. 09-cv-680, 2014 WL 4446153 at *20-23, I hold that Kwasnik's work at 160

Water Street, 1 Liberty Plaza, 1 World Financial Center, and 59 Maiden Lane was not

sufficiently related to "construction, excavation or demolition" to support a claim under section

241(6) of the New York Labor Law.  None of these buildings sustained structural damage and

the primary damage was limited to an infiltration of World Trade Center dust.  *See* Cannata

Decl., Exh. 7 at 7-2, Exh. 18A, Exh. 19H, Exh. 47 at 175:9-177:18; Leff Water Street Associates

Decl., Exh. F at 50:8-13, Exh. I.  The work performed to remediate these buildings consisted

exclusively of cleaning the dust and removing contaminated debris, tiles and sheetrock.  *See*

Cannata Decl., Exh. 17B, Exh. 18D, Exh. 20A, Exh. 53 at 217:3-218:24, Exh. 47 at 120:12-

121:13, 147:14-21, 175:9-177:18, Exh. 59 at 525:20-526:3; Leff Water Street Associates Decl.,

Exh. E at 83:22-84:9.  Accordingly, I grant the Defendants' motions for summary judgment and

dismiss Kwasnik's section 241(6) claims arising from his work at 160 Water Street, 1 Liberty

Plaza, 1 World Financial Center, and 59 Maiden Lane.

However, Kwasnik has raised a question of fact as to whether his work performed at 90 Church Street was sufficiently connected to "construction, excavation or demolition" to support his section 241(6) claims. Importantly, the particular task performed by a plaintiff need not constitute "construction, excavation or demolition" so long as the task is sufficiently connected to a larger project that qualifies as "construction, demolition, or excavation." *See Prats v. Port Authority of N.Y. & N.J.*, 100 N.Y.2d 878, 882 (2003); *McNeil v. La Salle Partners*, 52 A.D.3d 407, 409 (1st Dep't 2008). 90 Church Street sustained significant structural damage due to the collapse of 7 World Trade Center. *See* Leff Boston Properties Decl., Exh. F at 58:3-22. The remediation effort included substantial renovations, including the demolition of entire floors. *See* Cookson Decl., Exh. 222:23-223:5. Accordingly, with respect to 90 Church Street, I must address the second prong of section 241(6) liability.

### 2. Violation of Applicable Industrial Code Provision

Liability under section 241(6) also requires a violation of Part 23 of the New York Industrial Code, the regulations implementing section 241(6). *See Kaczmarek v. Bethlehem Steel Corp.*, 884 F. Supp. 768, 779 (W.D.N.Y. 1995); *Nostrom v. A.W. Chesterton Co.*, 59 A.D.3d 159 (1st Dep't 2009). It is insufficient to allege violations of OSHA regulations, *see Rizzuto*, 91 N.Y.2d at 351 n.1, or Part 12 of the New York Industrial Code, *see Kagan v. BFP One Liberty Plaza*, 60 A.D.3d 531, 532 (1st Dep't 2009). Further, the provision of Part 23 alleged to have been violated must "mandate compliance with concrete specifications and not simply declare a general safety standard or reiterate common-law principles." *Misicki v. Caradonna*, 12 N.Y.3d 511, 515 (2009); *see also Ross*, 81 N.Y.2d at 505 (1993). The provision must add a "specific, positive command" beyond the duty of reasonableness imposed by the common law. *Ross*, 81 N.Y.2d at 504.

20

For the reasons previously elaborated in *In re World Trade Center Lower Manhattan Disaster Site Litigation*, No. 09-cv-680, 2014 WL 4446153 at *26-27, I grant the Defendants' motions with respect to Kwasnik's claims under section 241(6) of the Labor Law alleging violations of sections 23-1.7(g) and 23-2.1(b) of the Industrial Code.  Kwasnik has failed to point to any facts that suggest he worked inside "enclosed" areas with "restricted means of egress," as required to be considered a "confined, unventilated area" as that term has been interpreted by New York courts.  N.Y. Comp. Codes R. & Regs. tit. 12, §§ 12-1.3(f), 23-1.7(g) (2014); *Ceverizzo v. City of New York*, 116 A.D.3d 469, 470-71 (1st Dep't 2014); *Kagan*, 60 A.D.3d at 532.

I deny the Defendants' motions with respect to Kwasnik's claims alleging violations of sections 23-1.5(c)(3), 23-1.7(h), 23-1.8(c)(4), and 23-1.8(b)(1) of the Industrial Code.  Those provisions impose sufficiently "specific, positive commands" to serve as predicate violations under section 241(6), *Ross*, 81 N.Y.2d at 504, and Kwasnik has presented evidence, sufficient to raise a triable issue of fact, that his injuries were caused by their violation.

**IV.    Conclusion**

In summary, for the foregoing reasons, the motion filed by Water Street Associates is DENIED with respect to Kwasnik's section 200 claims arising from his work at 160 Water Street.  The motion is GRANTED with respect to Kwasnik's section 241(6) claims arising from his work at 160 Water Street.

The motion filed by General Re is GRANTED in its entirety with respect Kwasnik's section 200 and section 241(6) claims arising from his work at 1 Liberty Plaza.

The motion filed by NASD is GRANTED in its entirety with respect to Kwasnik's section 200 and section 241(6) claims arising from his work at 1 Liberty Plaza.

The motion filed by Hillmann is DENIED with respect to Kwasnik's section 200 claims arising from his work at 1 Liberty Plaza.  The motion is GRANTED with respect to Kwasnik's section 241(6) claims arising from his work at 1 Liberty Plaza.

The motion filed by BMS is GRANTED in its entirety with respect to Kwasnik's section 200 and section 241(6) claims arising from his work at 1 Liberty Plaza, 1 World Financial Center, and 3 World Financial Center.

The motion filed by Boston Properties is DENIED with respect to Kwasnik's section 200 claims arising from his work at 90 Church Street.  The motion is GRANTED with respect to his section 241(6) claims, arising from his work at 90 Church Street, alleging violations of Industrial Code Rules 23-2.1(b) and 23-1.7(g), and DENIED with respect to his section 241(6) claims alleging violations of Industrial Code Rules 23-1.5(c)(3), 23-1.7(h), 23-1.8(c)(4), and 23-1.8(b)(1).

The motion filed by Structure Tone is DENIED with respect to Kwasnik's section 200 and section 241(6) claims arising from his work at 90 Church Street.  The motion is GRANTED with respect to his section 241(6) claims, arising from his work at 90 Church Street, alleging violations of Industrial Code Rules 23-2.1(b) and 23-1.7(g), and DENIED with respect to his section 241(6) claims alleging violations of Industrial Code Rules 23-1.5(c)(3), 23-1.7(h), 23-1.8(c)(4), and 23-1.8(b)(1).

The motion filed by Brookfield is DENIED with respect to Kwasnik's section 200 claims arising from his work at 1 Liberty Plaza and 1 World Financial Center.  The motion is GRANTED with respect to Kwasnik's section 241(6) claims arising from his work at 1 Liberty Plaza and 1 World Financial Center.

The motion filed by Ambient is DENIED with respect to Kwasnik's section 200 claims arising from his work at 90 Church Street.  The motion is GRANTED with respect to his section 241(6) claims, arising from his work at 90 Church Street, alleging violations of Industrial Code Rules 23-2.1(b) and 23-1.7(g), and DENIED with respect to his section 241(6) claims alleging violations of Industrial Code Rules 23-1.5(c)(3), 23-1.7(h), 23-1.8(c)(4), and 23-1.8(b)(1).

The motion filed by Maiden Lane Associates is DENIED with respect to Kwasnik's section 200 claims arising from his work at 59 Maiden Lane.  The motion is GRANTED with respect to Kwasnik's section 241(6) claims arising from his work at 59 Maiden Lane.

Accordingly, the Clerk shall mark the following motions in No. 07-cv-11291 as terminated: Doc. No. 125, Doc. No. 130, Doc. No. 134, Doc. No. 141, Doc. No. 145, Doc. No. 152, Doc. No. 161, Doc. No. 166, Doc. No. 178, and Doc. No. 185.  The Clerk shall enter judgment in case number 07-cv-11291 dismissing the Complaint against General Re, NASD, and BMS (collectively, the "Dismissed Defendants"), with costs to the Dismissed Defendants.

Kwasnik shall file an Amended Complaint by November 14, 2014, consistent with this Order and Opinion, dropping the Dismissed Defendants from the caption and the allegations and retaining the paragraph numbering of the existing complaint.  Defendants' Answers need not be amended.

SO ORDERED.

Dated:          New York, New York
               October 28, 2014

ALVIN K. HELLERSTEIN
United States District Judge